The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. Our case this morning, and if you'll help me with the pronunciation, it is 4-2-1-0-5-4-7, is it Jehle, Mark Jehle v. Merle Jehle? Jehle. Jehle. Okay, thank you very much. Counsel for Appellant, please state your name for the record. Pamela Davis Gorkowski for the Defendant Cross Plaintiff Appellant, Merle Jehle. Very good. Ms. Haas? And Carrie Haas for the Plaintiff Appellate, Mark Jehle. Good morning, and you may proceed. Morning, Your Honors and Ms. Haas. May it please the Court. This case arises from a claim of breach of fiduciary duty and intentional interference with contract brought by Plaintiff Mark Jehle against Defendant Merle Jehle. Merle Jehle also had a counterclaim alleging that Mark Jehle breached his fiduciary duty. The trial court entered judgment in favor of the plaintiff on both counts, on the breach of fiduciary duty count as well as the intentional interference with contract, and also she entered judgment in favor of the plaintiff on the counterclaim. So the judgment found that Merle Jehle owed a fiduciary duty and breached his fiduciary duty, and it found that Mark Jehle, she said she didn't know what kind of duty we were saying was involved, it was breach of fiduciary duty, and she also found that Mark Jehle did not breach his fiduciary duty. This is despite the fact that in 2000, so the brothers had a farming business together for many years. During the many years, Merle did the business part of the operation, and they obtained operating loans for 40 years, and they were using the crops as collateral, and those were paid in full every year, and the corporation was profitable every year. The parties began having disputes in 2015 or 2016, primarily because Mark asserted that Merle had been stealing money from the corporation up to $300,000. They kind of changed the way they did business in 2016 with Mark running the business and Merle just working in the fields, and that year the evidence is that Mark signed for the operating loan for $600,000. The evidence shows that he brought in $1.5 million in grain sales, from grain sales, and that he defaulted on the operating loan. The next year, 2017 through 2020, Merle operated the business, didn't share profits, as Mark did not share profits in 2016. Merle always paid the operating loan, so it was paid. Despite the fact that the brothers allegedly engaged in the same conduct, the court applied different standards to the two brothers, finding that Merle was responsible to Mark. What were the corporation's expenses in 2016? That's not in the record. We know that he brought in the $1.5 million. The $600,000 operating loan wasn't paid, and it's not in the record what the liabilities were. Well, I guess my question is, why isn't it in the record? Wouldn't the corporation tax returns have shown what the corporation brought in in terms of grain sales and would have shown the input costs, right? Neither party put it in the record. I'm not the trial attorney. I'm not sure why. Okay. Okay, so we're going to start with... I apologize, but let me ask you this. Couldn't the defendant have avoided owing a fiduciary duty by executing a waiver under Section 7.9 of the Business Corporation Act? Yes, Your Honor. Nobody did that. Okay, and you weren't the trial, but wouldn't it have been a simple solution to this issue? Well, again, I wasn't at trial, but I think if the parties were... These are laymen who are trying to operate a business, and there was ways that they could have ended the duty, but I think today I'd like to focus on the damages. Well, with respect to the punitive damages, they were $100,000 and consisted mostly of attorney's fees and costs. How is this excessive given the compensatory damages that are well over a million dollars? Well, part of the judgment called for forfeiture of what Merle allegedly should have paid to the corporation during the four years. So he, the court, had him forfeit every penny that he would have made for the four years when he worked alone farming the farms. So the award includes $160,000 a year for profits, totaling $640,000. The $565,000 for rental income and $63,000 in other rental income. I mean, this $565,000 is for rental of the machine that Merle used, and then there's other rent that came in, $63,500. Where did the trial court come up with the $160,000 figure? I could not figure that out going through the record. Mr. Jaley admitted, Merle Jaley, the defendant, admitted, and I don't have the page number, Your Honor, but he agreed that in one year he had $160,000 profit. The court entered that as a sanction against defendant for not complying with discovery, and we are not contesting that finding, that the profit was $160,000 a year. So the court... Now, wait a minute. Was that for Merle, or was that the corporation profit? It would have been the corporation, Your Honor, while it was being operated by Merle. And the court then decided to give all of that to Mark, right? Yes. I understand now. Thank you. Plus the rent for the rental equipment, $565,000, plus the $6,400 in rental income. So even though Merle had a 50% interest in that, and even though... We're not arguing excessiveness based on just the numbers and the comparison between the award and the amount of punitive damages. We're arguing two things. One is that there has to be a finding of reprehensibility before there's punitive damages. And if you include the forfeiture, it's a significant amount of money. It's over half of the judgment. And we're opposed to the double standard that Mark doesn't have to pay compensatory damages or Mark engaged in similar conduct in 2016. So how is it reprehensible for the defendant to do the same thing? Ms. Korkowski, since we're talking about compensation, in order for the defendant to forfeit compensation for the duration of the breach that the trial court did here, what did the trial court mean by compensation? Well, the judgment simply... Well, it just define it that I know of. So she's talking about the $160,000 a year profit that was assumed that the corporation made, the $565,000 in rental equipment, which she took judicial notice of, and we object to that, and I'd like to address that also, and the rent. So everything that should have been paid to the corporation by Merle Jailey was given in the judgment, according to the judgment. What should have been paid was then awarded to the plaintiff. I want to make something clear before we go on. I believe I earlier heard you say that $160,000 and the amount, the figure is not in dispute, but I thought I heard you say she awarded that to plaintiff because of a discovery violation. Oh, Your Honor, she didn't award that because she came up with the figure. She said, I'm going to find that the figure, that the profit that you would have made and should have been paid to the corporation, she didn't say... She said that she's coming up with the number based on a discovery violation. Okay. Okay. Just the number, not the award. Thank you. So counsel, so did it mean that he should forfeit 50% of the corporate profits? Well, it's not quite profits. It's what she found that he should have paid in because like the rent paying, she found that he, that Merle should have paid for use of the farm equipment during the four years. And then that count came up to 565,000. So that wouldn't necessarily be a profit, but she just found that that's something that should have been paid to the corporation by Merle. So was there any profits to forfeit? Any profits? Well, the wards. So she, well, she found that she didn't find that there was a profit. She found that there was the total profit that should have been paid based on the 160,000 a year, plus the amount that she found should have been paid for Merle's use of the farm equipment, plus rent. There's not any indication of profit except for her finding that the profit was 160 a year, 160,000 a year. Compensation that was considered here include any of the defendant's ownership in JB? She didn't word it that way. I don't know if I can explain it any better that it's what the amount of the judgment is. Well, counsel, the trial court said that the forfeiture was based upon clear case law. What case was the trial court referring to? Do you know? I don't, your honor. I mean, there's case law out there that allows for forfeiture. Certainly, there's a breach of fiduciary duty where our position here is just that it shouldn't be, it's not applicable in this case where the defendant didn't do anything different than the plaintiff. So how is it reprehensible and how is it? Let me ask a question. Did your client use the farm equipment? Yes, your honor. And he used it for how many years? Three? Four years. Four years. Well, what's wrong with paying rent for that? Why is that a problem? Because, well, because we're not opposed to paying rent assuming there was a breach of fiduciary duty. We're opposed. Let's suppose the judge found there was a breach. All right.  Yes, your honor. We're arguing that she improperly took judicial notice to arrive at that figure. And I think that's a very clear evidentiary error. And we're asking to have the 565,000 reversed because she took she took judicial notice of an article. Was it an article? It was an article. The plaintiff. Let's back up. Let's suppose she didn't take judicial notice of that. Was there enough evidence in the record other than that to show that the equipment had value and that your client used it? Yes, your honor. Yes, but there wasn't enough evidence to come up with a figure to support the award. There was no evidence supporting. Did your client present any evidence of the value of the rental? Well, no, your honor. That would be part of the plaintiff's burden and the plaintiff. Why don't you ask whose burden it was? I asked if your client submitted any. You know, your honor, but we objected to the judicial notice. Once you objected to the judicial notice, wouldn't have been an incumbent on you to say, there's another way to calculate that judge. Here's our evidence of what the rental income should be sort of like in a real estate dispute. Both sides present the estimate of a realtor as to the value of the property. You don't stop and think about whose burden it was. You stop and think about how do I rebut this evidence that's been admitted over my objection? Well, your honor, assuming that the evidence was admitted was an error and improper, then the plaintiff didn't produce evidence to support their case. In their case, if the plaintiff doesn't produce evidence to show their damages, it's not up to the defendant to say, well, this is what I think the damages are. That was up to the plaintiff and the court provided the evidence through judicial notice that the plaintiff failed to adduce. Doesn't the trial court say, I think I'm reading this correctly. The court has no evidence to establish exactly what equipment defendant used or when it was used or for how long it was used because the plaintiff failed to present that evidence. Correct. Okay. So the court, sui sponte in the judgment, took judicial notice of an article. There isn't any foundation that the article is beyond dispute. There isn't, she came up with $78.50 per acre. The plaintiff had asked for an award based on hourly usage, not acreage. And the court, the plaintiff failed to produce the evidence and the court went and did the research to find a number. The article she relies on is an article that tries to help farmers decide whether they should rent farm equipment or purchase it. I apologize, but since we're talking about the article, under Illinois rule of evidence, 201B, when we talk about articles such as this where you're taking judicial notice, did the journal article contain facts that are not subject to any reasonable doubt? Well, the fact that she found, the supposed fact that she found that it's $78.50 per acre, that fact is not in the article anywhere. We argued this in our briefs. The plaintiffs don't disagree. That number is not in there. That fact is not in there. The court had to do her own analysis and calculations to come up with it and to fill in the plaintiff's hole in their evidence. Judicial notice doesn't permit the trial court to go online and if I say, well, I had a CT scan, but I don't know how much it costs. It doesn't allow the trial court to go online and figure out how much the cost of a CT scan is. Judicial notice is for an undisputed type of fact, such as today at 65 degrees, not to come up with the value of damages that the plaintiff is claiming that they did improve. This is well beyond the scope of judicial notice. It was error and this part of the judgment should be reversed based on clear evidentiary error because there was no evidence to support it and the judicial notice was improper. Counsel, also I noticed that the trial court in its order referred to defendants exhibits eight, nine, and 10 and plaintiffs exhibits 11 and 13, but I can't find them in the record. Are they in the record? And I've just been unable to locate them or. I think everything but 13 is your honor. So, then what are defendants exhibits eight, nine, and 10. We're not relying on the exhibits and we're not arguing that the exhibits were improperly excluded and I could look it up, but I don't know off the top of my head what eight, nine, and 10 are. I guess I'm not positive they're in the record. Okay, I thought maybe they had something to do with the 2016 crop year, but evidently not. Well, they weren't relied upon in the trial for that, your honor. So, as to reprehensibility, it's a five-factor analysis. And so, we're not, again, not arguing that the amount of the punitive award is excessive just based on the number. We're arguing that it's a due process violation, substantive due process violation, because there has to be reprehensibility to support a punitive damage award. This issue is reviewed de novo by this court. Plaintiff cites a case ICD that says, well, it can be in the deference of the trial court, but that case ICD that they cite is not a constitutional claim. So, this court needs to review de novo whether the defendant's conduct was reprehensible in light of and comparing it to what the plaintiff did. And so, in my opinion. So, the five factors are, one, there's five. And if the absence of all means the award should be overturned. And if there's only one factor even, that means the punitive damage award is suspect because the purpose of punitive damage is to punish somebody. And the plaintiff, you know, would be, assuming there's a breach, the plaintiff would be entitled to an award of, you know, 50% of the 160 a year and whatever. So, he would be entitled to compensation. So, the question is, is it fair in the circumstances or is it unduly harsh and expensive to force these punitive damages? So, one, the first factor is whether the harm was physical. It wasn't. The second is whether there was a reckless disregard for health and safety. No, that's not involved. Three, the target of the conduct was financially vulnerable. Plaintiff doesn't argue in their brief that on this factor that there was vulnerability and there isn't any evidence of it. He had a post office job. He had received $1.5 million in 2016 that we don't know where it went. The conduct involved repeated actions or was an isolated incident. This was open and obvious farming that everyone knew about. And three, was it the result of intentional malice, trickery, or deceit? It was a mistake by a layman thinking that he was operating the corporation. And the status of the corporation wasn't clear to the layman Murrell. The complaint alleges that in 2017, the corporation wasn't in good standing. So, he was served with a complaint that said, oh, this corporation isn't even in good standing. Secondly, it's not like the plaintiff thought that the corporation was ongoing and came to work every day and helped out. The parties acted as if it was over. In October 2016, the Murrell told Mark that he was done farming with him. So, in that Hagashina's case, that's what imposes this heightened duty, a fiduciary duty to shareholders that's similar to a partnership. That case, the court found that the defendant tried to resign and he didn't. He didn't dissolve the corporation as you referred to, Your Honors. Your Honor, Justice Turner, he didn't dissolve the corporation, but he tried to resign. And in Hagashina's, the court found, yes, it was a breach of fiduciary duty, even though he tried to resign. But the court said it's not, that doesn't warrant punitive damages. Thank you, counsel. We'll hear from you on rebuttal. Thank you, Your Honor. Ms. Haas. Thank you, Your Honor. Carrie Haas on behalf of the plaintiff appellee, Mark Jaley. And we asked the court to affirm the trial court's judgment after careful consideration of evidence and testimony submitted over a four-day trial. Because there are several issues raised in the appeal and issues argued by appellant, I will do my best to address those. But for any I cannot get to, I would rely on appellee's response brief. I think we need to begin with the discretion given to the fact finder in this case. That has been glossed over, I believe, by counsel and argument. The trial court, as indicated previously, presided over a four-day trial and had the opportunity to observe the witnesses and evidence in the context of a living trial. This is a heavy burden for the appellant to meet. After careful consideration and submission of written closing argument, the trial court issued an 18-page opinion granting judgment in favor of plaintiff and against the defendants on all claims. Importantly, in its judgment and as the fact finder, the circuit court noted that defendant's testimony at times was not credible and defied common sense. The circuit court also noted Murrell's lack of credibility was of equal concern. In contrast, no indication by the circuit court in finding Mark's testimony on any issue not credible or disingenuous. Counsel touched on the sanctions piece. While not directly an issue on appeal, that sanction piece does play into the argument presented here. Justice, I believe it was Turner, I apologize if I got that wrong, asked a question about plaintiff failing to present evidence to calculate a reasonable rental rate. And I would submit to the court that the sanctions ruling played into the court's calculation and analysis of those damages. Because of defendant's misconduct in violating clear court orders, violating Supreme Court rules, failing to turn over discovery, plaintiff was clearly prejudiced by that. The trial court's opinion found that to be the case. And so the court, after very careful consideration, not only of the article that's been referenced, the heritage documents that were admissible at trial, which indicated an hourly rate for rent of the equipment, in addition to the fact that defendant through misconduct, Counsel, did you keep reimbursement at an hourly rate for the equipment rental? Was that your position at the trial court level? Well, the position was that the heritage documents could identify the damages in terms of a reasonable rental rate. At an hourly rate, correct? Well, but if the plaintiff, if your client doesn't present evidence of what equipment was used, for how long it was used, and for how long it was used, how can you ever suggest now that there was any way for the court to assess damages? Right. I mean, I don't know if I made that clear. You're asking for an hourly rate, but we don't know what equipment was used, nor do we know how long it was used for how many hours. Isn't that a problem for your client, at least as to this aspect of damages? Thank you. To answer that question, I would submit that defendant did not produce the documents that would have revealed that plaintiff asked during discovery, plaintiff asked or demanded on 237B notices for that information to provide. So I believe the court took that into consideration when ultimately making the calculation. And I would also suggest that- Well, the court made the calculation based upon how many acres were farmed, right? Correct. But in denying the motion to reconsider, I believe the court explained that it could have calculated that number based on the heritage hourly rate, but did not do so because it was not fair to defendant as that number would have been high. Okay. If, even if I assume that the trial court's calculation of what was it? $562,000, wouldn't only half of that be accorded back or given back to the, either your client or the corporation? I mean, after all the equipment was used to produce the $160,000 per year, which your client was awarded. Correct. And I believe the court dealt with that in its forfeiture award, that because of the egregious intentional continuing violations by defendant in this case, that forfeiture was an appropriate remedy. So I believe the trial court took that into consideration. Okay. Was the $160,000, as opposing counsel suggested, the amount that the corporation would have made in those four years, or was it the amount that your client should have received? I believe the trial court's finding indicated that the $160,000 was the amount of profit received by Merle J. Lee while farming on his own, farming for the corporate clients, and that it rightfully belonged to the corporation. Okay. And that's part of the forfeiture then. So your client got that, his 80 and Merle's 80, right? Correct. Okay. Well, let me follow that up with, isn't forfeiture like a, sort of a form of punishment or isn't it somewhat punitive? Yes, I believe the case is cited in the response brief. In those cases, the trial court dealt with both punitive damages and forfeiture in the same breath. And I believe the court did the same thing in this instance. I'd like to speak next to counsel's statement that, well, the brothers engaged in comparable behavior. So there can be no reprehensibility or no punitive damage finding here. I would submit to this court that the record does not state that. Um, as indicated by the trial court, Merle breached his fiduciary duties by directly competing with JBI by taking JBI's clients as his own personal clients. When he used the corporate equipment to compete with JBI by not compensating JBI for his use of the equipment by receiving and misappropriating corporate funds and by receiving rental income from Heritage FS without compensating JBI. The record has no evidence or testimony to support a breach of fiduciary duty as to any of those issues with regard to Mark Jaley. Mark was left holding the bag. Mark had his livelihood and business ripped out from under him because Merle competed with the clients, took all the equipment and all the machinery. The testimony was clear. Mark Jaley never engaged in those actions. As it relates to the 2016 crop year, I agree with the trial court. I'm still trying to grapple with what breach of fiduciary duty by Mark Jaley as it relates to Merle in that year. The amended counter. I apologize. Let me ask you. In Dow versus Bittner, a fourth district case, they refused to extend Hagsinas versus Raylord to a 23% shareholder, holding that the 23% shareholder did not hold a fiduciary duty in that case. Why should this case be governed by Hagsinas and not Dow? Because in this situation, Merle Jaley was a 50% shareholder. He was also an officer of the corporation. And importantly, he retained significant control and access to the corporation for all the years that he was competing against it from 2017 to 2020. He took steps to sell corporate equipment during that period of time. He took steps to negotiate an insurance payment on behalf of JBI during that time. He used the corporate equipment. He rented out the corporate equipment. So I believe this is more similar, Your Honor, to the Smith Schrader case. Where, similar to this case, the trial court found a breach of fiduciary duty and a tortuous interference of business relationships and awarded both punitive damages and attorney's fees. And I should add also found that the defendant forfeited his right to any distribution that may have been available to him. So in this case, there was significant control. And quite frankly, the legal axioms that are so well set in corporate law that number one, officers and directors of a corporation cannot actively exploit their positions for their own personal benefit and the activities of the officers and directors may not hinder or defeat the ability of the corporation to continue to do business for which it developed. Both of those points identified in the Smith case, Merle clearly violated those. There is no evidence to suggest otherwise. And it's really a red herring to suggest that in 2016, Merle did anything out of the ordinary in terms of paying corporate expenses and depositing corporate loan proceeds in a corporate bank account. Is that the only year, however, that the corporation defaulted on the operating loan? According to the record, yes, Your Honor. Okay. There's no explanation for that though in the evidence as far as I can tell as to why that occurred. The explanation I would submit to Your Honor is the payment of cash rent to Merle J. Lee of approximately $46,000 payment of 1500 to Merle J. Lee in 2016 for labor and then the $58,000 payment that Merle took out of the corporate account in November of 2016 would have paid that delinquency. Well, the cash rent was for jointly owned property, right? Correct. Okay. And as to the $58,000, I know that Merle testified he took it out because that was a art payment from the government. And he said there was $116,000. So he took his half of it. Did Mark take the other $58,000 then? No, there is no indication that that amount was taken by personal use as opposed to applying it to corporate liabilities. And there was no evidence as to a past practice either, Your Honor, in terms of how that payment was split. And I would add, it's important that he took that money out after the court found he October of 2016 when he took all the corporate clients for himself. Counsel, you argue that the defendant forfeited review of the compensation in this case here. This is a bench trial. And is he required to preserve a claim and a post judgment motion? Well, Your Honor, this case is a little unique in the sense of the trial court asked specifically from counsel to address forfeiture in written closing argument. And the defendant failed to address it in any fashion whatsoever. And so I argue in his post judgment motion that the judgment should be reversed in its entirety. Including this counterclaim. He did in the post trial motion, but not in the trial court, Your Honor. And yet you still allege that you believe it was forfeit for review. I do. And the trial court indicated the same during the motion to reconsider post trial motion hearing. Even if not waived, Your Honor, if this isn't a case where forfeiture is appropriate, I don't know what is. Merle single handedly dismantled a family business that had been operating for years and years and years. And as the court find, did it for no other reason than to spite his brother. This is not a simple mistake of a lay person. As early as March of 2017, defendant was on notice of the breach or the allegations of a breach of fiduciary duty and that standard. In addition, defendant testified at trial that he knew compensation should have been paid to the company for rental rate. And for all those reasons, forfeiture as part of punitive damages was appropriate in addition to the attorney award, which the court included in that. Um, finally, I will just address, there are no cases cited by appellant to suggest that the punitive damage award was excessive or somehow violated substantive due process. First, they don't address the factual findings made by the trial court in which the trial court found this conduct to be intentional, egregious, continuing. The cases cited by plaintiff, however, highlight similar factual patterns in which trial courts and appellate courts have affirmed punitive damages, similar as to the punitive damages awarded here. Council did not address what we believe to be a pleading deficiency as to the 2016 crop year. As identified in the response brief, a return of 50% of corporate dividends was never led in the amended counterclaim. The specific allegations were that Mark Daly fraudulently took out the operating loan in 2016, which was negated by Murrell's own testimony and evidence from the bank president and Mark both indicated that all corporate funds went into JBI's bank account, a bank account that Murrell Daly at all times still had access to. Clearly, he withdrew a payment in November of 2016. For him to argue now, well, there was $1.5 million of grain sales, don't you think we would have heard about that in evidence? The only testimony and evidence submitted was that JBI did not have sufficient revenue after grain sales were sold and liabilities were paid to take care of all of the operating loan. I will also end with a $72,000 wind farm payment, an allegation that up until this appeal, Murrell said went to line Mark Daly's pockets. Well, no, that payment went to JBI as the bank president testified to. So, for all the reasons outlined in Apeli's response brief, as well as made an oral argument here today, we would ask that this court affirm the trial court's finding in its entirety. Thank you. Thank you, counsel. Rebuttal. Counsel just stated that the only testimony was that the receipts in 2016 was used to pay corporate liabilities and after liabilities, the assets were zero. There is no testimony that says that. The plaintiff doesn't say it. He doesn't rebut our case that $1.5 million was testimony by anybody that the 2016 proceeds of $1.5 million went to pay corporate liabilities. Secondly, counsel states that the reason the court took judicial notice of the per acre rental rate is because of a sanctions violation. That has not been argued on appeal. I have not heard that argument before, and that's waived. The court never linked sanctions to the award for the rental value. That's another argument that's waived and hasn't been presented, and the court never said that. Plaintiff admits that the forfeiture is part of the punitive damage award. Counsel admitted that. Again, the conduct where the defendant attempted to resign the corporation, the court found there was a subsequent breach of fiduciary duty, but because he tried to resign the corporation, punitive damages were not awarded appropriate. Counsel states there's no evidence that Mark breached his fiduciary duty in 2016. We know from the evidence that the operating loan was always paid in full. Even in the suggestion that the proceeds of the sale of grain went to pay other liabilities, well, that's bank fraud in itself because it was supposed to get the operating grain was collateral for the operating loan. We know that there were damages because the bank took possession of a sprayer. Merle had a 50% interest in the sprayer, and they took a wind farm check. Mark had 50% interest in that to pay the loan, so they didn't put on any evidence that they used the money to pay liabilities, and we know that there was some damages, and it's against the manifest weight of the evidence to say that Mark did not breach his fiduciary duty in 2016. As to reprehensibility, again, the five factors. Your time has expired, counsel. Thank you. Judge, I'm sorry. That was my mistake. She's got two minutes left. Oh, Mike, I'm sorry. Thank you. Thank you for correcting that. Thank you. So, there has to be a finding, and this is reviewed de novo, of reprehensibility. So, we know that one and two, the first two factors don't apply, and the third factor doesn't apply. As to the fifth factor, in the brief, they just say that defendant tries to downplay his conduct by saying it didn't evidence intentional malice, trickery, or deceit. So, they don't really review the fifth factor. And the fourth, so none of the factors apply, and the reprehensibility, if the court, if none of those factors apply, then the reprehensibility standard isn't met, and the punitive damage award, including forfeiture, would be needed to be reversed as a matter of law based on constitutional law. The judicial notice, I think, was clear error. I think if you are struggling with any of these issues, the judicial notice was clear error, because that article does not say that the proper rate for per acre rental of machinery equipment, $78.50. That's based on calculations, undisclosed calculations, and analysis by the trial court, and there's nothing in the record that the court said or has been argued on appeal that that award resulted from sanctions. That's a misstatement of the record. Thank you, Your Honor. Thank you, counsel. We'll take this matter under advisement and await the readiness of our next case after lunch. Thank you.